IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KENNETH MACK,                          )
                                       )
          Plaintiff,                   )
                                       )
     v.                                )     2:06-cv-721
                                       )     **Electronic Filing**
MICHAEL J. ASTRUE,                     )
COMMISSIONER OF SOCIAL                 )
SECURITY,                              )
                                       )
          Defendant.                   )

**MEMORANDUM OPINION**

May 16, 2007

## I.     INTRODUCTION

Plaintiff, Kenneth Mack ("Plaintiff"), brings this action pursuant to 42 U.S.C. §§ 405(g)

and 1383(c)(3), seeking review of the final determination of the Commissioner of Social Security

("Commissioner") denying Plaintiff's applications for disability insurance benefits ("DIB") and

supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act

("Act").  The parties have filed cross-motions for summary judgment pursuant to Federal Rule of

Civil Procedure 56, and the record has been developed at the administrative level.

## II.     PROCEDURAL HISTORY

Plaintiff applied for SSI and DIB on September 2, 2004, and September 15, 2004,

respectively, alleging disability as of October 8, 2003.  R. 21, 40-46.  The claims were denied on

November 22, 2004.  R. 30-33.  Plaintiff responded by filing a timely request for a hearing.  R.

34.  On October 17, 2005, a hearing was held in Morgantown, West Virginia, before

Administrative Law Judge Donald McDougall (the "ALJ").  R. 167-192.  Plaintiff, who was

represented by counsel, appeared and testified at the hearing.  R. 169-192.  Larry Bell, an

impartial vocational expert, was present for the entire hearing and testified before its conclusion.

R. 187-191.  On January 24, 2006, the ALJ issued a decision in which he determined that

Plaintiff was not "disabled" within the meaning of the Act.  R. 13-22.  The Appeals Council

denied Plaintiff's request for review on April 21, 2006, thereby making the ALJ's decision the final decision of the Commissioner in this case.  R. 5-7.  Plaintiff now seeks review of that decision, and the matter is before this Court on cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56.

### III.     STATEMENT OF THE CASE

Plaintiff was born on April 18, 1966, making him thirty-nine years old at the time of the ALJ's decision.  R. 171.  This made him a younger person under 20 C.F.R. §§ 404.1563(c) and 416.963(c).  He quit school shortly after finishing the ninth grade.  R. 171.  Prior to quitting school, he had been in special reading and English classes.  R. 172.  Plaintiff started small engine repair school, but he never finished.  He has past relevant work experience as an extruder machine operator and an overhead crane operator.  R. 19.

Plaintiff saw Dr. Cesar N. Noche for the first time on October 22, 2004, complaining of episodes of chronic low back pain.  R. 15, 111.  He reported that his back had been injured after a few men had hit him on his back several years earlier, and that he had been having chronic back pain ever since.  R. 15, 111.  He also indicated that, while working in Florida, he had injured his back when he fell from some stairs.  R. 15, 111.  Dr. Noche's examination revealed tenderness over the paraspinal muscles in the lumbosacral area, the latissimus dorsi, the gluteus maximus and medius muscles, and the lower lumbar spine.  R. 111.  Although Dr. Noche found Plaintiff to be in "no apparent distress," he ordered an MRI of Plaintiff's lower lumbosacral spine to rule out disc herniation.  R. 111.  The MRI was performed on November 1, 2004.  R. 16, 113.  It revealed that Plaintiff's spinal alignment was normal, that his vertebral segments and discs were of normal stature and signal intensity, that his spinal canal and neural foramina were well maintained, and that his paraspinal tissues were undisturbed.  R. 113.  There was no evidence of disc bulging, disc herniation, or hypertrophic change.  R. 113.

On April 4, 2005, Plaintiff was examined by Dr. Thu Le at the Jefferson Pain and Rehabilitation Center.  R. 139-142.  Plaintiff's chief complaint was neck and lower back pain.  R. 139.  In a letter to Dr. Manie Juneja, Plaintiff's primary care physician, Dr. Le made the

following observations with respect to Plaintiff's complaints about functional limitations:

> Patient reports functional difficulties.  Sitting tolerance is up to one hour.
> Standing tolerance is up to 30 minutes.  Walking tolerance is up to 10 minutes.
> The maximum number of pounds he can lift on an occasional basis is 45 lbs.  The
> maximum number of pounds he can lift on a frequent basis is 10 lbs.  Patient
> reports having major difficulty with lifting heavy bags of groceries or any type of
> heavy weights.  He has major difficulty with bending, reaching above the
> shoulder, using his hands, opening jars, climbing ladders and kneeling.  He has
> minor difficulty with pushing, pulling and reaching above the shoulder.  He has
> minor difficulty with sweeping, vacuuming, climbing stairs and moving his neck.
> No difficulty with lifting bags of groceries, using his hands, opening doors and
> opening jars on the right side.  He has no difficulty with driving.

R. 140.  Dr. Le's examination of Plaintiff revealed that Plaintiff had "much more pain with lumbar extension compared to lumbar flexion."  R. 141.  Dr. Le opined that Plaintiff suffered from bilateral lumbar facet arthropathy, bilateral cervical facet arthropathy, discogenic cervicalgia, right arm radiculitis and chronic pain syndrome.  R. 141.

Since Plaintiff continued to experience low back pain, severe neck spasms and a tingling sensation in the bilateral upper extremities, Dr. Juneja ordered an MRI.  R. 16.  The MRI, which was performed on May 18, 2005, revealed that Plaintiff's thoracic spine was normal.  R. 130. With respect to Plaintiff's cervical spine, however, the MRI indicated that Plaintiff suffered from: (1) moderate diffuse disc bulge at C5-6 with a small to moderate superimposed central and left paracentral disc extrusion extending inferiorly, resulting in mild central stenosis with moderate right and severe left foraminal stenosis; (2) small disc protrusions at C2-3 and C6-7, resulting in minimal central stenosis at C6-7; and (3) straightening of the normal cervical lordosis (which may have been related to muscle spasms).  R. 128.

On June 14, 2005, Plaintiff was examined by Dr. David J. Engle, who was a neurosurgeon with Pittsburgh Neurosurgery Associates.  Dr. Engle, in a letter to Dr. Juneja, explained:

> I've had the opportunity to review the MRI scans, which were done essentially of
> his entire spine, cervical thoracic and lumbar.  Quite frankly, his lumbar spine
> MRI scan is a very normal study, perhaps some minimal spondylosis but that's
> really about it.  Thoracic spine MRI scan is unremarkable.  Cervical spine MRI
> scan shows, in my opinion, some minor degenerative changes but nothing
> requiring operative intervention and nothing that would obviously, in my mind,
> account of his overall symptom complex.  He has some degenerative narrowing of
> mild to moderate severity and that's really about it.  I don't appreciate any

compression fractures, no Chiari malformation, no changes in the cord.

At this time, I see no surgical indication in this man or any discrete anatomic basis to account for his multitude of symptoms. I have nothing further to recommend for him. I would recommend to you that he be referred for a formal physiatry evaluation or maybe even chiropractic treatment and continued pain management. I discussed this with the patient and I told him that if he was uncomfortable with my non-surgical recommendations that he could certainly seek other opinions.

R. 137-138. Reporting the results of his examination of Plaintiff, Dr. Engle noted that Plaintiff's cranial nerves were intact, that he had negative straight leg raising, and that his spine was straight without deformity, tenderness or congenital stigmata. R. 137. His cervical range of motion, lumbar spine mechanics and shoulder excursion were all good. R. 137. No atrophy or fasciculations were found. R. 137.

Plaintiff was examined by Dr. Le again on June 20, 2005. R. 135. On that occasion, Plaintiff complained of neck and low back pain radiating into his bilateral feet. R. 135. Nevertheless, the intensity and frequency of his pain had decreased. R. 135. Dr. Le noted that Plaintiff was making "fair progress" with "conservative measures." R. 135. He was diagnosed with bilateral lumbar facet arthropathy, right arm radiculopathy, bilateral cervical facet arthropathy and discogenic cervicalgia. On August 29, 2005, Dr. Le conducted another examination of Plaintiff. R. 133-134. The results of this examination were not materially different from those of the June 20, 2005, examination. R. 17, 133-136.

Dr. Juneja completed a form indicating that Plaintiff was temporarily disabled from October 22, 2004, through February 28, 2005. R. 148. The primary diagnosis listed by Dr. Juneja was "exacerbation of bronchial asthma," while "severe mechanical low back pain" was listed as the secondary diagnosis. R. 148. On October 19, 2005, Dr. Juneja completed a form detailing his opinion as to Plaintiff's physical limitations. R. 143-146. Dr. Juneja opined that Plaintiff could only sit or stand for less than four hours and walk for less than five hours in an eight-hour workday. R. 143. It was noted that he needed a cane to walk, but that he did not have to frequently alternate positions. R. 143. Dr. Juneja indicated that Plaintiff could not crawl or balance, but that he could bend, stoop, climb, crouch or kneel. R. 144. According to Dr. Juneja, Plaintiff could not lift more than twenty-five pounds, but he could occasionally lift between

4

eleven and twenty-five pounds and frequently lift up to ten pounds.  R. 144.  Although Dr. Juneja reported that Plaintiff needed complete freedom to rest frequently throughout the day, this condition was only expected to last between six months and one year, depending on Plaintiff's symptoms.  R. 145.

Dr. Le completed an assessment form on November 18, 2005.  R. 149-152.  According to Dr. Le, Plaintiff could only sit, stand or walk for less than one hour in an eight-hour workday.  R. 149.  It was further noted that Plaintiff could not bend, stoop, crawl, climb, balance, crouch, kneel, or lift more than ten pounds.  R. 150.  Dr. Le believed that Plaintiff's condition was permanent.  R. 151.

At the hearing, Plaintiff testified that his back and legs were bad.  R. 172.  He explained that, while he was carrying a 90-pound roll of roofing up a ladder, the ladder broke.  R. 172.  He apparently fell two stories, causing the 90-pound roll to fall on his head.  R. 172.  Plaintiff asserted that his legs would go numb when he remained seated for an extended period of time.  R. 174.  He indicated that these problems had been exacerbated by a motorcycle accident a few years earlier.  R. 174-175.  When asked by the ALJ how much he could lift, Plaintiff responded by saying that a two-liter bottle of pop or a gallon of milk was the most that he could lift.  R. 175.  He also stated that his asthma affected his ability to work, although he admitted to smoking a half-pack of cigarettes per day.  R. 177-178.

Plaintiff testified that his last full-time job had been with Central Florida Roofing, where he worked for three and a half years.  R. 179.  At that job, the most that he had to lift was a 90-pound bundle of shingles.  R. 179.  Before working for Central Florida Roofing, Plaintiff worked for Permacote Industries, which was a steel factory located in Uniontown, Pennsylvania.  R. 179.  He was employed by Permacote Industries for two and a half years, working as a crane operator.  R. 180.  That job sometimes required him to lift more than 100 pounds at a time.  R. 180.  Prior to working for Permacote Industries, Plaintiff spent a few months working for Orlando Concrete.  R. 181.  He worked for a painting contractor for a short while, but he left that job after his motorcycle accident.  R. 181-182.  Plaintiff also spent seven years working as an extruder operator for Extrudex, which was located in Cleveland, Ohio.  R. 180-181.  At times, that job

required him to lift 100-pound barrels of plastic pebbles.  R. 181.

The ALJ inquired about Plaintiff's activities of daily living.  R. 182.  Plaintiff testified that, although he lived alone, his mother and sister would help him by washing dishes and doing laundry.  R. 182.  He did his own cooking, but he relied on his sister to do his grocery shopping. R. 182.  He explained that he had lost his driver's license due to his inability to pay fines.  R. 183.  Plaintiff stated that, except for his uncle and his sisters, he generally did not go out to visit others.  R. 184.  He also testified that his pain sometimes made it difficult for him to get dressed. R. 184.

After the conclusion of Plaintiff's testimony, Mr. Bell testified.  R. 187.  The ALJ asked Mr. Bell whether any light[1] or sedentary jobs were available for a hypothetical individual with Plaintiff's age, education and work experience which would allow that individual to change positions for a minute or two at least once every half-hour, and to avoid exposure to extremes of fumes, dusts, gasses and other respiratory irritants.  R. 189.  Mr. Bell testified that such an individual could work as an assembler, which was classified as a light job.  R. 190.  He also stated that such an individual could work as a ticket seller, which was classified as a sedentary[2] job.  R. 190.  In addition, Mr. Bell explained that machine tender jobs, which were available at both the light and sedentary levels, were consistent with the capabilities of the hypothetical individual described by the ALJ.  R. 190.  When asked by Plaintiff's counsel whether the hypothetical individual's ability to perform the duties of these jobs would be compromised by a

---

[1] 20 C.F.R. § 404.1567(b) provides: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  Identical language is contained in 20 C.F.R. § 416.967(b).

[2] 20 C.F.R. § 404.1567(a) provides: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  Identical language is contained in 20 C.F.R. § 416.967(a).

need for complete freedom to rest throughout the day (such that the individual would be off-task for one-third of the workday), Mr. Bell testified that such a limitation would effectively preclude the individual from working.  R. 191.  In response to another question posed by Plaintiff's counsel, Mr. Bell explained that someone who needed to miss more than two days per month would be terminated.  R. 191.

## IV.    STANDARD OF REVIEW

This Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994).  The Court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record.  *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986).  Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 108 S.Ct. 2541, 2545 (1988).  As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently."  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  "Overall, the substantial evidence standard is a deferential standard of review."  *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period."  *Stunkard v. Secretary of Health and Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); 42 U.S.C. § 423(d)(1).  A claimant is considered to be unable to engage in substantial gainful activity "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

To support his ultimate findings, an ALJ must do more than simply state factual conclusions.  He must make specific findings of fact.  *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983).  The ALJ must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence.  *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its rulemaking authority under 42 U.S.C. § 405(a), has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act.  The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further.  At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."  [20 C.F.R.] §§ 404.1520(b), 416.920(b).  At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  §§ 404.1520(c), 416.920(c).  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies.  §§ 404.1520(d), 416.920(d).  If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled.  If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.  §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003)(footnotes omitted).

## V.    DISCUSSION

In his decision, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of October 8, 2003.  R. 14.  The ALJ found Plaintiff to be suffering from bilateral cervical facet arthropathy, bilateral lumbar facet arthropathy, discogenic cervicalgia, right arm radiculitis, chronic pain syndrome, and asthma.  R. 14.  Although these impairments were found to be "severe" for purposes of 20 C.F.R. §§ 404.1520(a)(4)(ii),

404.1520(c), 416.920(a)(4)(ii) and 416.920(c), the ALJ concluded that they did not meet or

medically equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listing of

Impairments"). R. 15. In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed

Plaintiff's residual functional capacity as follows:

> Upon careful consideration of the entire record, the undersigned finds that the
> claimant has the residual functional capacity to perform light work with the ability
> to briefly (one to two minutes) change positions at least every one-half hour; and
> no exposure to extremes of fumes, dusts, gases, or other respiratory irritants.

R. 15. Given this assessment, it was determined that Plaintiff could not return to his past

relevant work as an extruder machine operator or overhead crane operator. R. 19. Nevertheless,

the ALJ concluded that Plaintiff could work as an assembler, a machine tender, or a ticket seller.

R. 20. Mr. Bell's testimony established that these jobs existed in the national economy for

purposes of 42 U.S.C. § 423(d)(2)(A). R. 187-191. Consequently, Plaintiff was not found to be

"disabled" under 42 U.S.C. § 423(d)(1). R. 20.

In support of his motion for summary judgment, Plaintiff relies on the opinions of his

treating physicians, Dr. Juneja and Dr. Le. Doc. No. 8 at 4-14. In support of his motion for

summary judgment, the Commissioner places reliance on Dr. Juneja's characterization of

Plaintiff's disability as "temporary." Doc. No. 10 at 14. For the reasons that follow, the Court is

convinced that the ALJ's determination that Plaintiff was not statutorily disabled is unsupported

by substantial evidence, and that the case must be remanded to the Commissioner for further

administrative proceedings.

At the outset, the Court is mindful of an important principle of administrative law. In

*Securities & Exchange Commission v. Chenery Corporation*, 332 U.S. 194, 196 (1947), the

United States Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of
> administrative law. That rule is to the effect that a reviewing court, in dealing
> with a determination or judgment which an administrative agency alone is
> authorized to make, must judge the propriety of such action solely by the grounds
> invoked by the agency. If those grounds are inadequate or improper, the court is
> powerless to affirm the administrative action by substituting what it considers to
> be a more adequate or proper basis. To do so would propel the court into the
> domain which Congress has set aside exclusively for the administrative agency.

The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

The law governing an ALJ's treatment of the opinion of a treating physician has been clearly established. If "a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." 61 Fed. Reg. 34490, 34491. The ALJ must accord great weight to the reports of treating physicians, "especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). "When a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). If the ALJ determines that a treating physician's opinion is outweighed by conflicting medical evidence, he may reject that opinion. *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985). Whenever the ALJ's decision is not fully favorable to the claimant, the opinion of the ALJ "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." 61 Fed. Reg. 34490, 34492.

In the instant case, the ALJ characterized the opinions of Dr. Engle and Dr. Janeja as "relatively accurate." R. 19. Nonetheless, he rejected Dr. Janeja's view that Plaintiff needed to "sit in a recliner or lie down for a substantial period." R. 19. The ALJ went on to state that allowances for Plaintiff's "credible limitations" had been incorporated into the residual functional capacity assessment. R. 19. Dr. Le's opinion as to Plaintiff's limitations was

10

dismissed as being "too extreme."  R. 19.

The ALJ's analysis does not adequately support his conclusion.  Although Dr. Engle's opinion could have reasonably been construed to be evidence of non-disability, Dr. Engle expressed no opinion as to Plaintiff's functional limitations.  R. 137-138.  For this reason, the opinions of Dr. Juneja and Dr. Le regarding Plaintiff's functional limitations were virtually uncontradicted.  Even if the Court were to assume that Dr. Engle's opinion constituted sufficient evidence to justify the rejection of the opinions of Dr. Juneja and Dr. Le, the Court cannot affirm the Commissioner's decision if, "while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."  *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).  The ALJ's conclusion in the instant case does not have a firm foundation in the evidence of record, nor is it consistent with some of the ALJ's own findings.

There is a gap between Dr. Juneja's opinion, upon which the ALJ expressly relied, and the ALJ's ultimate residual functional capacity determination.  The ALJ was clearly aware of the specific restrictions placed upon Plaintiff by Dr. Juneja.  R. 18 ("Dr. Juneja opined that the claimant could sit four hours in an eight hour workday, stand four hours in an eight hour workday, and walk four hours in an eight hour workday.").  Having accepted Dr. Juneja's opinion except with respect to Plaintiff's alleged need to "sit in a recliner or lie down for a substantial period," the ALJ stated that allowances for Plaintiff's "credible limitations" had been incorporated into the residual functional capacity assessment.  R. 19.  That assessment, however, does not reflect the four-hour limitations expressed by Dr. Juneja.  Instead of accommodating Plaintiff's inability to sit, stand or walk for more than four hours, the ALJ stated that Plaintiff was capable of performing "light work with the ability to briefly (one to two minutes) change positions at least every one-half hour . . ."  R. 15.  It is unclear how the ALJ made the leap from accepting Dr. Juneja's opinion (except with respect to Plaintiff's need to "sit in a recliner or lie down for a substantial period") to a residual functional capacity assessment that utterly fails to accommodate the four-hour limitations found in that same opinion.  R. 15, 19.

An ALJ's residual functional capacity assessment (and corresponding hypothetical

question to a vocational expert) must include all of the claimant's limitations. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004); *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).  It must be remembered that, at the fifth step of the sequential evaluation process, the burden is on the Commissioner.  *Allen v. Barnhart*, 417 F.3d 396, 401, n. 2 (3d Cir. 2005); *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000).  The ALJ, of course, was not required to accept every limitation *alleged* by Plaintiff.  *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).  Only those limitations which were found to be *credibly established* needed to be incorporated within the residual functional capacity assessment.  *Id.*  The problem with the ALJ's residual functional capacity assessment in this case, however, is that it failed to incorporate some limitations which were not expressly rejected and which appeared (from the language in the opinion describing Dr. Juneja's opinion as "relatively accurate") to have been *credibly established*.  R. 15, 18-19.  Thus, the ultimate determination in this case is not only unsupported by substantial evidence, but also unsupported by the ALJ's own findings of fact.

The Commissioner describes Dr. Juneja's opinion as "totally incompatible with a finding of disability under the Act."  Doc. No. 10 at 14.  He bases this assertion on Dr. Juneja's view that Plaintiff's "disability" was not expected to last for a period of twelve months or more.  The ALJ also placed reliance on the "temporary" nature of Plaintiff's "condition."  R. 18 ("Dr. Juneja reported that the claimant's condition was temporary and should last less than 12 months.").  When viewed within the context of the present case, however, the Commissioner's reliance on the duration of Plaintiff's "disability" as a basis for denying benefits is misplaced.

The Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).  The text of the statute is unclear as to whether the *inability to engage in any substantial gainful activity* or the *impairment* must last for "a continuous period of not less than 12 months[.]" *Id.*  The SSA has consistently construed the statute to mean that a claimant is not disabled if, within twelve months after the onset of an impairment, that impairment no longer precludes substantial gainful activity.  65 Fed. Reg.

12

42772, 42774 (2000).  The SSA's construction of the statute is reflected in formal regulations

which provide that a claimant is not disabled, regardless of his or her medical condition, if he or

she engages in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  In *Barnhart v.*

*Walton*, 535 U.S. 212, 217-225 (2002), the United States Supreme Court held that the SSA's

construction of the statute was permissible and, therefore, entitled to deference under *Chevron*

*U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).  The Supreme

Court explained:

> The interpretation makes considerable sense in terms of the statute's basic
> objectives.  The statute demands some duration requirement.  No one claims that
> the statute would permit an individual with a chronic illness–say, high blood
> pressure–to qualify for benefits if that illness, while itself lasting for a year, were
> to permit a claimant to return to work after only a week, or perhaps even a day,
> away from the job.  The Agency's interpretation supplies a duration requirement,
> which the statute demands, while doing so in a way that consistently reconciles
> the statutory "impairment" and "inability" language.

*Barnhart*, 535 U.S. at 219.  Hence, the relevant question is whether Plaintiff's *inability to engage*

*in any substantial gainful activity* met (or was expected to meet) the Act's durational

requirement, and not whether his *impairments* met (or were expected to meet) that requirement.

In concluding that Plaintiff was not statutorily disabled, the ALJ relied on Dr. Juneja's

opinion that Plaintiff's "disability" was temporary.  R. 18.  The problem with this

characterization of Dr. Juneja's opinion, however, is that it ignores the timeframes associated

with *two separate opinions*.  On October 22, 2004, Dr. Juneja completed a form indicating that

Plaintiff was "temporarily" disabled, and that this "disability" was expected to last until February

28, 2005.  R. 148.  One year later, on October 19, 2005, Dr. Juneja determined that Plaintiff

was still disabled, and that this disability was expected to last between six and twelve months,

depending on his symptoms.  R. 145.  Although Dr. Juneja did not believe that Plaintiff's

disability would last for the duration of his life, it is clear that he believed that it *had lasted* for a

full year, and that it was *expected to last* for another six to twelve months.[3]  This is not a case like

---

[3]There is no evidence which suggests that Dr. Juneja believed Plaintiff to be disabled
from October 22, 2004-February 28, 2005, non-disabled from February 26, 2005-October 18,

*Barnhart*, in which the claimant engaged in substantial gainful activity eleven months after the alleged onset of disability. *Barnhart*, 535 U.S. at 215. Dr. Juneja believed that Plaintiff needed complete freedom to rest throughout the day, and that he needed to lie down (or sit on a recliner) for a substantial period of the day. R. 145. Although the ALJ expressly rejected Dr. Juneja's report with respect to Plaintiff's need to lie or recline, he indicated that the rest of that report was "relatively accurate." R. 19. It is difficult to reconcile the ALJ's acceptance of Dr. Juneja's opinion (except for the rejection of a specific limitation) with his ultimate finding of non-disability, considering the fact that Dr. Juneja's two findings of *temporary* disability were a full year apart.

Although Dr. Engle did not appear to believe that Plaintiff's impairments were as severe as Plaintiff alleged, his letter to Dr. Juneja was not specific as to what functional limitations Plaintiff's impairments caused. R. 137-138. The opinions of Dr. Le and Dr. Juneja were consistent with a finding of statutory disability, and their findings with respect to Plaintiff's functional limitations were not contradicted by countervailing medical evidence. The ALJ was not free to reject the opinions of two treating physicians without relying on countervailing medical evidence. *Morales*, 225 F.3d at 318.

Since the record does not contain evidence of a consultative medical examination or additional residual functional capacity assessments, a determination by the Court that Plaintiff is entitled to benefits under Titles II and XVI of the Act would be premature. Nonetheless, the decision of the Commissioner is not supported by substantial evidence. 42 U.S.C. § 405(g) provides, in pertinent part, that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Pursuant to this authority, the Court will reverse the decision of the Commissioner in this case, and remand the case for further administrative proceedings consistent with this opinion.

---

2005, and then disabled again on October 19, 2005. The only reasonable interpretation of Dr. Juneja's opinions as to Plaintiff's disability status, which were expressed a full year apart, was that Plaintiff was disabled throughout the intervening period of time.

## VI.    CONCLUSION

For the foregoing reasons, the Court finds that the decision of the Commissioner is not supported by substantial evidence.  Accordingly, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision will be reversed, and the case will be remanded for further administrative proceedings.  An appropriate order will follow.

s/David Stewart Cercone
David Stewart Cercone
United States District Judge

cc:    N. Leah Fink, Esq.
       Kunkel & Fink
       1208 Allegheny Building
       Pittsburgh, PA 15219

       Jessica Smolar, AUSA